UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| PIERRE COUTURE AND LINDA V.M. BEAUPARLANT, | ) ) ) | CIV. 10-5026 |
|      Plaintiff and Third Party Defendants, | ) ) ) | |
| vs. | ) ) | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND MOTION FOR SANCTIONS** |
| NICKI L. ANDERSON, | ) ) | |
|      Defendant, | ) ) | |
| vs. | ) ) | [Docket No. 44] |
| MARK ANDERSON, | ) ) | |
|      Third Party Plaintiff. | ) ) | |

**INTRODUCTION**

This matter is before the court pursuant to a complaint alleging negligence, loss of consortium, and property damage by plaintiffs Pierre Couture and Linda V.M. Beauparlant, against defendant Nicki L. Anderson arising out of an August 2, 2008, motorcycle accident in South Dakota. See Docket No. 1. Pending before the court is a motion to compel production of documents and a motion for sanctions to exclude exert testimony and dismiss claims [Docket No. 44] filed by Mr. Couture and Ms. Beauparlant arising from a dispute between the parties regarding production of certain documents. The district court, the Honorable Jeffrey L. Viken, referred the motion to this

1

magistrate judge for decision pursuant to 28 U.S.C. § 636(b)(1)(A).  See Docket No. 52.

**FACTS**

The facts pertinent to the motion pending before this court are as follows. On or about August 2, 2008, Mr. Couture was driving a motorcycle, owned by his wife Linda Beauparlant, on Nemo Road, in Pennington County, South Dakota.  See Docket No. 1 at ¶ 5.  Nemo Road is a two-lane highway. Mr. Couture was traveling westbound on Nemo Road toward Rapid City with a group of friends who were attending the annual Sturgis Motorcycle Rally. Id. at ¶ 6.  Ms. Anderson, who was also traveling with friends, was driving a motorcycle, traveling eastbound on Nemo Road.  Id. at ¶ 7.  At some point Mr. Couture and Ms. Anderson were involved in a motorcycle/motorcycle accident.

**A.    Facts Relating to Safeco's Accident Reconstruction Report**

In a February 12, 2009, letter from Safeco to SGI insurance (Mr. Couture's insurance company), Safeco stated:

> Based on the results of our thorough investigation, which included an independent accident reconstruction, we have determined Mr. Couture was liable for this accident and therefore his negligence exceeded the South Dakota threshold.  We will be denying liability on behalf of Nikki Anderson for any damage or injury claim you or your insureds may present.  As ***the reconstruction report was obtained*** through the course of our investigation, it is considered work product of our claim file and will not be released.

See Docket No. 49-14 at pages 3-4 (emphasis added).

2

On April 28, 2010, plaintiffs Pierre Couture and Linda Beauparlant filed this action in this court against Nicki Anderson, alleging that Ms. Anderson was negligent and caused the accident.  See Docket No. 1.  Ms. Anderson filed an answer denying responsibility for the accident, and asserted with her husband, Mark Anderson, a counterclaim against Mr. Couture, alleging that Mr. Couture was negligent and caused the accident.  See Docket No. 13.[1]

On August 13, 2010, Mr. Couture served his first set of interrogatories and first request for production of documents on Mr. and Ms. Anderson.  On September 18, 2010, Mr. Anderson served his answers and on September 20, 2010, Ms. Anderson served her answers. Subsequently, on December 7, 2010, both the Andersons were deposed.

In both Ms. Anderson's and Mr. Anderson's answers to the interrogatories and depositions, they made reference to a Safeco accident reconstruction report in support of their view of the evidence and liability.  That Safeco accident reconstruction report has never been provided to plaintiffs.

In response to Interrogatory No. 13, which asked for the facts Mr. Anderson was basing his claim of liability on, Mr. Anderson answered under oath that he was relying on "reconstructions reports."  See Docket No. 49-2 at page 5.  In response to Interrogatory No. 16, which asked Mr. Anderson

---

[1]Mark Anderson and Linda Beauparlant's claims are for loss of consortium and, in Ms. Beauparlant's case, also for property damage.

whether he had any knowledge of any "examination, inspection, tests, experiments or other studies" made by an expert for the purposes of arriving at a conclusion or opinion, Mr. Anderson answered under oath that such reports did exist in the form of a "reconstruction of the accident done by the insurance company." Id. at page 6.  Finally, in response to Interrogatory No. 25, requesting the identity of each document which may be used as an exhibit during trial, Mr. Anderson responded that the "accident reconstruction may be used." Id. at page 10.  Mark Anderson swore these answers to be true on September 17, 2010.  Id. at page 14.

With regards to Ms. Anderson's answers, in response to Interrogatory No. 7, which asked whether Ms. Anderson's was denying responsibility or negligence, she stated under oath that her denial of responsibility and negligence rested in part on an independent report from the insurance company indicating that she was not at fault.  See Docket No. 49-3 at page 3. In response to Interrogatory No. 19, which asked whether Ms. Anderson had any knowledge of any "examination, inspection, tests, experiments or other studies" made by an expert for the purposes of arriving at a conclusion or opinion, Ms. Anderson stated under oath that she "believe[d] Safeco conducted an independent accident reconstruction." Id. at page 6.  Ms. Anderson also stated under oath that she "believe[d] Safeco conducted an independent accident reconstruction" and that she had "received a letter from Safeco

4

indicating [that their report] was in her favor." Id. at page 6.  Ms. Anderson

swore these answers were true on September 15, 2010.  Id.

Additionally, Ms. Anderson testified under oath at her deposition on

December 7, 2010, that Safeco had performed an investigation and sent her a

letter noting that "after their investigation, [Safeco] found Mr. Couture at fault."

See Docket No. 49-5 at pages 5-6 (deposition page 34: lines 18-25; page 35:

lines 1-25; page 36: line 1).  Ms. Anderson testified that Safeco stated in its

letter that there was an accident reconstruction report, but that Safeco was

keeping the report.  Id.  Ms. Anderson testified that she never saw the report

herself.  Id.

**B.    Facts Relating to Photographs Used As Exhibits at Rybak Deposition**

On March 9, 2011, South Dakota Highway Patrol Trooper Robert Rybak

was deposed.  See Docket No. 49-9.  During Trooper Rybak's deposition,

defense counsel produced photographs and questioned Trooper Rybak on these

photographs.  Id. at pages 2-3.  Defense counsel had not previously disclosed

these photographs to plaintiffs, although plaintiffs had previously served Nicki

Anderson with discovery requests for any and all photos that defendant had in

her possession or caused to be taken.  See Docket No. 49-3.  Plaintiffs' counsel

requested that defense counsel lay evidentiary foundation for the photographs.

See Docket No. 49-9 at page 2.  Defense counsel responded that he would,

however no foundation was ever provided.  Although no foundation was ever

5

provided for the photographs, defense counsel continued to question Trooper Rybak during the deposition regarding the photographs.[2] Id. at pages 2-3.

## C. Communications Between Counsel Regarding the Discovery

On February 3, 2011, plaintiffs' counsel wrote a letter to defense counsel seeking a copy of the Safeco accident reconstruction report referenced in the 2009 Safeco letter, and relied upon by both Mr. and Ms. Anderson in discovery. See Docket No. 49-6. Defense counsel responded on February 9, 2011. See Docket No. 49-7. Notably, defense counsel did not deny the existence of the Safeco accident reconstruction report. Id. Instead, defense counsel refused to produce the report, asserting that it was prepared in anticipation of litigation, privileged as attorney work product, and disclosed mental impressions, conclusions, opinions, or legal theories of the defendant and her attorney. Id.

On February 17, 2011, plaintiffs' counsel again requested a copy of the Safeco accident reconstruction report. See Docket No. 49-8. Plaintiffs' counsel noted that the Safeco accident reconstruction report existed in late 2008 or early 2009, well before April 28, 2010, the date plaintiffs initiated this lawsuit. Id. Plaintiffs' counsel asserted that Safeco's accident reconstruction report

---

[2] Plaintiffs' counsel objected to defense counsel's entire line of questioning regarding the photographs because the photographs were not provided in response to the request for production of documents nor was any foundation provided regarding the photographs. See Docket No. 49-9 at page 2.

would not have been prepared in anticipation of litigation nor would it be covered as attorney work product.   Id.

On March 10, 2011, plaintiffs' counsel faxed defense counsel a letter addressing the nondisclosed exhibits presented at Trooper Rybak's deposition. See Docket No. 49-10.  In the letter, plaintiffs' counsel suggested that these photographs appeared to be from the Safeco accident reconstruction report, which defense counsel had previously refused to provide.  Id.  Plaintiffs' counsel also referenced defense counsel's failure to provide a privilege log with any of defendant's prior assertions.  Id.  In addition, plaintiffs' counsel requested to "meet and resolve the dispute before seeking relief from the court" and provided times that counsel was available to meet.  Id.  Defense counsel did not respond to the March 10 letter.

On March 17, 2011, plaintiffs' counsel sent another letter to defense counsel "again attempting to set a meeting to resolve [the] dispute before filing a motion to compel with the Court."  See Docket No. 49-11.   On March 22, 2011, defense counsel provided a two-sentence reply to plaintiffs' letter indicating that the "accident investigation commissioned by Safeco was not the source [of the] pictures [defense counsel] used nor did it result in the production of any type of report."  See Docket No. 49-13.  The response letter also indicated that "Safeco utilized the services of Larry Smiltneek at MRA

Forensic Sciences to investigate this accident but no report was produced."[3]
Id.

On March 23, 2011, plaintiffs' counsel faxed a responsive letter again requesting a meeting with defense counsel. See Docket No. 49-14. On March 25, 2011, plaintiffs' counsel received a letter from defense counsel addressing the Safeco report. See Docket No. 49-15. The letter from defense counsel relayed that Safeco had no report. Id. Defense counsel noted that what defendants had referred to as a "reconstruction" was what defense counsel would refer to as an "investigation." Id. Defense counsel stated that he asked Safeco to check all files and to verify that no such report actually existed. Id. Defense counsel noted that "as to matters concerning any additional opinions of experts, I will produce those in accordance with the scheduling order on file." Id.

On April 1, 2011, plaintiff's counsel again requested a meeting to resolved the disputes, noting that this was the fifth attempt to do so. See Docket No. 49-16. Defense counsel e-mailed plaintiff on April 12, 2011, in response to plaintiffs' counsel request to meet and confer. See Docket No. 49-17. Defense counsel again indicated that "Safeco representative's use of the term 'reconstruction' was a misnomer when in fact no such reconstruction was

---

[3] Mr. Smiltneek has not been disclosed as an expert and no report from him has been disclosed to plaintiffs at any time. See Docket No. 40.

done.  Instead, it would be best called an evaluation by Safeco which, it is my understanding, included a review of the accident scene and miscellaneous reports in anticipation of litigation." <u>Id.</u>  Defense counsel also noted that he did "not believe that the documents reviewed contained anything which [was] not currently in [plaintiffs] possession." <u>Id.</u>  Defense counsel also indicated that "the pictures [used at Trooper Rybak's deposition] and their significance, foundation, etc. [would] be disclosed pursuant to the Court's order on expert disclosure." <u>Id.</u>  Despite repeated requests, plaintiffs have never been provided with the Safeco accident investigation/report or the photographs used at Trooper Rybak's deposition.  <u>See</u> Docket No. 45 at page 5.

The District Court's order [Docket No. 32] granting an extension of time and modifying the court's scheduling order ordered that "the identity of an reports from retained experts under Rule 26(a)(2) shall be due from both parties by July 15, 2011."  On July 21, 2011, plaintiff faxed defense counsel a letter asking defendant to disclose expert witnesses and reports by the end of that week.  <u>See</u> Docket No. 49-18.  Defendant did not designate experts until July 26, 2011, after the extension of time offered by plaintiffs in the July 21, 2011, letter.  <u>See</u> Docket No. 40.  At the time defendant designated her expert, defendant's designation provided no written report from the designated expert, Brad Booth.

Brad Booth's expert report was subsequently disclosed to plaintiffs only *after* plaintiffs' motion to compel and for sanctions was filed.  <u>See</u> Docket No. 50-2.  However, defendant has never provided to plaintiffs any accident reconstruction report from Safeco or Mr. Smiltneek nor has defendant provided plaintiffs with the photographs used during Trooper Rybak's deposition.

As a result, the plaintiffs filed this motion to compel production of documents and for sanctions, requesting that this court compel the production of the Safeco reports and the photographs used by defense counsel during Trooper Rybak's deposition.  <u>See</u> Docket Nos. 44 and 45.  Plaintiffs also asks this court to exclude testimony and witnesses, to dismiss the Andersons' counterclaim and third-party claim, or for other appropriate sanctions for defendant's actions with regards to discovery in this case.

## DISCUSSION

### A.   **Good Faith Certification**

Mr. Couture and Ms. Beauparlant assert that they have contacted defense counsel prior to filing the instant motion and attempted, unsuccessfully, to arrive at a mutually-agreeable solution.  <u>See</u> Docket No. 45 at pages 3-5.  Defendant does not take issue with this assertion.  Additionally, the record clearly indicates plaintiffs repeated attempts to set up a meeting with defense counsel to attempt to resolve the discovery disputes.  Accordingly, the court finds that Mr. Couture and Ms. Beauparlant have satisfied the meet-

10

and-confer prerequisite to filing the instant discovery motion.  See Fed. R. Civ.

P. 37(a)(1); D.S.D. LR 37.1.

**B.    Plaintiffs' Request for Production of Documents**

      **1.    Production Requests**

            **a. The Safeco Reports**

Plaintiffs' assert that the defendant, Ms. Anderson, and the third party

plaintiff, Mr. Anderson, have repeatedly referred to and relied on the Safeco

reports as the basis of their factual contentions.  However, despite repeated

requests, no such report has been produced by defense counsel.  Defense

counsel **now** asserts that no such report exists and that Ms. Anderson has not

relied on any such report in providing her deposition testimony or shaping her

knowledge of the events.

Despite defense counsel's assertion that no report exists, signed by

defense counsel under pain of sanction pursuant to Fed. R. Civ. P. 11,

plaintiffs still seeks an order from the court requiring the production of the

Safeco report.  In support of their position, plaintiffs cite to numerous

documents in the record, including answers to interrogatories by both

Ms. Anderson and Mr. Anderson, deposition testimony from Ms. Anderson, and

a letter from Safeco to plaintiffs' insurance company, all of which indicate that

Safeco conducted a thorough investigation into the cause of the accident, that

an accident reconstruction report was completed, and that Safeco reached the conclusion that Mr. Couture was at fault in the accident.

Additionally, defense counsel's initial response to plaintiffs' request for the Safeco report, defense counsel did not deny its existence–he instead asserted that the report was prepared in anticipation of litigation, privileged as attorney work product, and disclosed mental impressions, conclusions, opinions, or legal theories of the defendant and her attorney.  See Docket No. 49-7.  Later, defense counsel's position as to the existence of any Safeco reports later changed when he informed plaintiffs that in fact no Safeco report actually existed.  See Docket Nos. 49-13 and 49-15.

Federal law applies in a diversity case where a party asserts the work product doctrine.  Baker v. Gen. Motors Corp., 209 F.3d 1051, 1053 (8th Cir. 2000) (citations omitted).  The federal rules provide that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A).  The Eighth Circuit distinguishes between documents produced in the ordinary course of business and in anticipation of litigation:

> [T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the

> prospect of litigation.  But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

Simon v. G. D. Searle & Co., 816 F.2d 397, 401 (8th Cir.1987).  The Advisory Committee notes following Rule 26 indicate that "[m]aterials assembled in the ordinary course of business . . . or for other nonlitigation purposes" are not subject to qualified immunity under the Rule.  Fed. R. Civ. P. 26(b)(3) advisory committee's note.

The documents in this case were prepared by Safeco or Larry Smiltneek.[4] The apparent purpose of the documents was to determine whether or not Safeco would pay or deny Mr. Couture's claims against Ms. Anderson.  "Courts in the District of South Dakota have set forth the general rule that investigative materials assembled by insurance companies are not protected by the work product privilege."  Lamar Adver. of S.D., Inc. v. Kay, 267 F.R.D. 568, 577 (D.S.D. 2010) (citations omitted).  Other courts have held that routine

-----

[4] It is unclear from the record whether the Safeco reports were prepared by Larry Smiltneek or whether Mr. Smiltneek conducted his own investigation separate and apart from Safeco.  In a letter to plaintiffs from defense counsel, it was noted that:

> The accident investigation commissioned by Safeco was not the source of pictures I used nor did it result in the production of any report.  Safeco utilized the services of Larry Smiltneek at MRA Forensic Sciences to investigate this accident but no report was produced.

See Docket No. 49-13.  It is unclear from this letter whether the Safeco investigation was conducted by Mr. Smiltneek or whether Mr. Smiltneek conducted an additional investigation at Safeco's request.

13

investigatory documents prepared by insurance company representatives are not work product unless they are prepared for a specific event with a real possibility of becoming an actual adversary proceeding.  See e.g., Janicker v. George Washing Univ., 94 F.R.D. 648, 650 (D.D.C. 1982) (reasoning that "[a] more or less routine investigation ... is not sufficient to immunize an investigative report developed in the ordinary course of business" under the work product doctrine); DeGiacomo v. Morrison, 2003 WL 22871701, at *1 (D.N.H. 2003) (reasoning that when documents are prepared by an adjuster without an attorney's assistance, courts have found that the result is ordinary work product, not opinion work product) (citing In re San Juan Dupont Plaza, 859 F.2d 1007, 1014 (1st Cir. 1988)); Reavis v. Metro. Prop. & Liab. Ins. Co., 117 F.R.D. 160, 164 (S.D. Cal. 1987) (permitting discovery of an insurance adjuster's opinion work product).

Here, plaintiffs are asking for the reports created by Safeco that provide the basis for their denial of Mr. Couture's claim and which Ms. Anderson and Mr. Anderson rely on, in part, as the basis for their claims.  The documents concern an investigation by Safeco into the cause of the accident between Mr. Couture and Ms. Anderson.  The documents appear to have been compiled in the ordinary course of business after the accident occurred.  Additionally, the letter from Safeco to SGI insurance indicating that Safeco would be denying Mr. Couture's claim because they determined that he was at fault was dated

14

February 12, 2009.  Thus, it would be reasonable to believe that Safeco's investigation took place either late in 2008 or early 2009.  Litigation in this case did not begin until April, 2010.  Therefore, it is unlikely that Safeco's investigation into the cause of the accident and any reports prepared from such investigation were prepared in anticipation of litigation.  Rather, it appears the reports were prepared in the ordinary course of business in determining whether or not to deny Mr. Couture's claim.

Despite the evidence that indicates a Safeco report does exist, defense counsel now asserts that Safeco's investigation into the cause of the accident and Safeco's subsequent conclusion to deny Mr. Couture's claim did not result in the making of any report or writing.  Rather, defense counsel states that Safeco did nothing more that review witness statements, police reports, and photographs.  See Docket no. 50-1 at ¶ 6.  A party may not move to compel discovery on the basis of a mere suspicion that the producing party has additional information that it failed to disclose.  Harris v. Koenig, 271 F.R.D. 356, 370 (D.D.C. 2010) ("I cannot compel what does not exist.  If plaintiffs are speculating that documents responsive to these requests do exists, there must be a reasonable deduction that that is true, and not a mere hunch."); Hubbard v. Potter, 247 F.R.D. 27, 29 (D.D.C. 2008) ("Courts supervising discovery are often confronted by the claim that the production made is so paltry that there

15

must be more that has not been produced or that was destroyed.  Speculation that there is more will not suffice ....").

In this case, the court finds it difficult to believe that absolutely no report exists when Ms. Anderson, Mr. Anderson, and Safeco all refer to the investigation and reports created as a result of the investigation.  Both Ms. Anderson and Mr. Anderson referred to the report in the answers to their interrogatories and indicated that the Safeco report formed part of the basis for their claims.  Mr. Anderson even indicated that the Safeco accident reconstruction report may be used as an exhibit at trial.  Additionally, Ms. Anderson referred to the report in her deposition testimony and also indicated that she received a letter from Safeco indicating that the Safeco report was in her favor.

The court finds it equally perplexing that Safeco would themselves send a letter to SGI Insurance, plaintiffs' insurance company, representing that Safeco conducted a "thorough investigation, which included an independent accident reconstruction" and then have nothing, in the form of a report or otherwise, to show for it, yet, at the same time, deny the claim and inform plaintiffs' insurance company that the "reconstruction report [was] obtained through the course of [the] investigation, [was] considered work product of [the] claim file and [would] not be released."  See Docket No. 49-14 at pages 3-4.  Why would

16

Safeco attempt to invoke the work product privilege for documents they now claim do not exist and never did exist?

From the record in this case, it is apparent that plaintiffs are not basing their motion to compel the Safeco reports on a mere suspicion or hunch that the documents exists.  Rather, there is overwhelming support in the record that indicates that a Safeco report was created and did exist.  Under these circumstances, the court believes that a Safeco report does exist and that the report is not covered under the work product privilege.  Therefore, defendant shall obtain copies of the Safeco report and provide the same to plaintiffs.

Alternatively, if the report no longer exists, plaintiffs may take the deposition of the author of the February 12, 2009, Safeco letter, Amy Pappas, and ask her questions, under oath, as what she knew of the report at the time she wrote the letter, including who wrote the report, what its conclusions were, where it was kept, and any other questions plaintiffs may find relevant. Plaintiffs may also take the depositions of any other Safeco employees who may testify about the existence of the report, whether it still exists, and if not, the time, circumstances, and reasons for the destruction of the report.  These factual matters are relevant to a spoliation of evidence instruction at trial.

### b.    Larry Smiltneek's Investigation and Report

It is unclear from the record and correspondence between plaintiffs' counsel and defendant's counsel whether Mr. Smiltneek conducted an independent investigation in addition to any investigation conducted by Safeco or whether the Safeco investigation and report was conducted by Mr. Smiltneek.  Although plaintiffs address this in their motion to compel and for sanctions, defendant did not address Mr. Smiltneek or his involvement in defendant's response to the motion to compel.  Accordingly, defendant shall clarify to plaintiffs the involvement of Mr. Smiltneek as it relates to the matters of this case, including his status as a testimonial or nontestimonial expert, the date Mr. Smiltneek's services were contracted for, whether Safeco or defense counsel hired Mr. Smiltneek, and any other facts from which the court and plaintiffs may determine the discoverability of Mr. Smiltneek's opinions or reports.

### c.    Photographs Used During Trooper Rybak's Deposition

Plaintiffs also seek an order from the court compeling defendant to produce the photographs used by defense counsel during the deposition of Trooper Rybak.  At the deposition, defense counsel marked the photographs as exhibits and was asked by plaintiffs' counsel to lay foundation for them. Defense counsel replied that he would lay foundation, however, defense counsel never provided foundation for the photographs during the deposition.

18

Despite the lack of foundation, defense counsel continued to question Trooper Rybak about the photographs.

Following Trooper Rybak's deposition, plaintiffs' counsel attempted to obtain copies of the photographs from defense counsel.  Defense counsel responded to those requests by implying that the photographs were taken by an expert and would be disclosed with the expert's report.[5]  Defense counsel, in another letter, reinforced this impression by noting that "the pictures, their significance, foundation, etc. will be disclosed pursuant to the Court's order on expert disclosure."  See Docket No. 49-17.

Now, for the first time, defense counsel, in their response to plaintiffs' motion to compel, states that "the pictures used in the deposition were taken by counsel for Defendant."  See Docket No. 50 at page 4.  Defense counsel goes on to note in his response that "it is unknown whether counsel for Plaintiff has viewed the accident scene or taken photographs themselves but it is known that they have not indicated to this Court that they are unable or incapable of

---

[5] The body of the letter in response to plaintiffs' request for the photographs provides, in full:

> The accident investigation commissioned by Safeco was not the source of pictures I used nor did it result in the production of any report.  Safeco utilized the services of Larry Smiltneek at MRA Forensic Sciences to investigate this accident but no report was produced.

See Docket No. 49-13.

doing so.  Anderson has made responses to all discovery with the exception of certain matters which are attorney work product." Id.

The rules of discovery shield against the disclosure of documents prepared in anticipation of litigation by or for another party.  Fed. R. Civ. P. 26 (b)(3)(A).  To invoke the "work product" doctrine, the party from whom discovery is sought must "(I) expressly make the claim [of privilege]; and (ii) describe the nature of the documents ... not produced or disclosed - and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim" Id. R. 26(b)(5).  While work-product is broadly applied, it is a qualified privilege that may be overcome by a proper showing of substantial need and an inability without undue hardship to obtain the substantial equivalent.  Fed. R. Civ. P. 26(b)(3) advisory committee's note.

Here, plaintiffs request the photographs used by defense counsel during Trooper Rybak's deposition.  Following plaintiffs' repeated requests for the photographs, defense counsel never indicated that they fell under the work product privilege.  Despite misleading plaintiffs, on more than one occasion, into believing that the photographs would be disclosed in accordance with the court's scheduling order for expert disclosures, defense counsel now attempts to invoke the work product doctrine to prevent their disclosure.  Such an attempt in unavailing.  The Eighth Circuit has held "that disclosure to an adversary waives work product protection as to items actually disclosed."

20

Pittman v. Frazer, 129 F.3d 983, 988 (8th Cir. 1997) (citing In re Chrysler

Motors Corp. V. Overnight Evaluation Program Litig., 860 F.2d 844, 846 (8th

Cir. 1988)).

> If documents otherwise protected by the work-product rule have been
> disclosed to others with an actual intention that an opposing party may
> see the documents, the party who made the disclosure should not
> subsequently be able to claim protection for the documents as work
> product.

Pittman, 129 F.3d at 988 (citing 8 Charles A. Wright, Arthur R. Miller, &

Richard L. Marcus, Fed. Practice & Procedure § 2024 at 209 (1994)).

"The work product doctrine is to be applied in a commonsense manner in

light of reason and experience as determined on a case-by-case basis."

Pittman, 129 F.3d at 988.  Here, defense counsel brought the photographs to

Trooper Rybak's deposition, marked them as exhibits, and proceeded to

question Trooper Rybak about them.  Clearly, defendant intended to allow

plaintiffs' counsel to view the photographs at the deposition.  Later, in a letter

to plaintiffs, defense counsel indicated that the photographs would be disclosed

pursuant to the court's scheduling order for expert disclosures.

Defense counsel now argues that plaintiffs have failed to show that they

are "unable to obtain equivalent information through other means without

undue hardship."  See Docket No. 50 at pages 4-5.  However, by utilizing and

disclosing the photographs to plaintiffs during Trooper Rybak's deposition and

flatly telling plaintiffs that the pictures would be disclosed, defense counsel effectively waived the work product privilege as to those photographs. Pittman, 129 F.3d at 988.

Furthermore, defense counsel's actions caused plaintiffs to believe that they would not need to obtain equivalent information because they were led to believe that the photographs would be disclosed. Defense counsel has placed plaintiffs in a peculiar position by making them believe the photographs would be disclosed and then asserting the work product privilege at the eleventh hour. The tactics defense counsel has engaged in with regards to the discovery in this case amount to a clear abuse of the rules of discovery. Accordingly, defense counsel must provide copies of the photographs used during Trooper Rybak's deposition to plaintiffs.

## C.    Plaintiffs' Request For Sanctions

Plaintiffs ask this court to impose sanctions in the form of preventing Mr. and Ms. Anderson from making any reference to the Safeco research or reports and that Nicki Anderson's personal testimony be excluded because it has been "informed by and coached by the Safeco report." Plaintiffs also ask that Mr. Booth's testimony also be excluded as a consequence of not complying with the district court's scheduling order. Finally, plaintiffs ask that Mr. and Ms. Anderson's counterclaim and third-party claim against plaintiffs be dismissed.

22

### 1.    Safeco Reports

Plaintiffs ask that any reference to the Safeco research or reports be excluded from trial and that Ms. Anderson's personal testimony also be excluded at trial.   Plaintiffs' request is based on the fact that, despite repeated references and reliance by Ms. Anderson, Mr. Anderson, and Safeco to such a report, no report has been disclosed by defendants.   Furthermore, defense counsel now takes the position that no such report exists.

As discussed above, this court has ordered defendant to obtain and produce copies of the Safeco reports and to provide the same to plaintiffs.   In the event that such reports are not provided as ordered, or that depositions of Safeco employees are unavailing, plaintiffs may seek further action.   However, plaintiffs' request to exclude references to the Safeco reports at trial would be more appropriate as a pretrial motion *in limine*.

### 2.    Testimony of Brad Booth

In the parties' joint stipulation and motion for an extension the expert disclosure deadlines set by the district court's original scheduling order, the parties stipulated to simultaneous disclosure and also stipulated that "any expert not so designated will not be permitted to testify at trial."   See Docket No. 32.   In response to the joint motion, the district court amended its scheduling order and ordered that, "the identity of and reports from retained

experts under Rule 26(a)(2) shall be due from both parties by July 15, 2011."
See Docket No. 33.

Ms. Anderson did not designate her expert, Brad Booth, until July 26, 2011, more than a week following the court's scheduling order deadline.  See Docket No. 40.  Additionally, no expert report from Mr. Booth accompanied Ms. Anderson's expert designation as required by the scheduling order.  Id. Rather, defense counsel summarized the "substance" of Mr. Booth's testimony, by noting, "it is *believed* that Brad Booth will testify regarding the causation of the accident and evidence in support of the fact that the accident occurred in Nicki Anderson's lane of traffic."  Id. (emphasis added).  The summary also noted that Mr. Booth had not prepared a report regarding the matter.  Id.

The report, provided belatedly after plaintiffs filed their motion to compel, is interesting reading.  See Docket No. 50-2.  In the report, Mr. Booth states that he has been told that no depositions had been taken prior to the time the report was written.  Id. at 2.  The date on the report is August 21, 2011.  Id. at 1.  Obviously, someone misinformed Mr. Booth or he independently was mistaken as the depositions of Mr. and Ms. Anderson and Trooper Rybak had all been taken before the August, 2011, date of Mr. Booth's report.  Mr. Booth concluded in his report that, while difficult to determine, the impact likely took place just north of the yellow dividing line between Mr. Couture and Ms. Anderson's lanes of travel.  Id.  According to plaintiffs, then, Mr. Booth's

24

opinion is that the collision took place in Mr. Couture's lane of travel <u>See</u> Docket No. 51, at page 10.  This is exactly the opposite of defense counsel's representation of what Mr. Booth's opinion would be.

Plaintiffs ask this court to prohibit Mr. Booth from testifying at trial as a sanction for defendant's failure to timely comply with the district court's scheduling order.  Plaintiffs assert that the defendant's failure to timely disclose their expert and expert report has prejudiced the plaintiffs by denying them access to evidence in support of defendant's claims.  Plaintiffs further assert that they have been unable to prepare an effective defense against the affirmative claims against them.  Plaintiffs argue that Ms. Anderson and Mr. Anderson "have gained a tactical advantage by having all of Plaintiff's evidence, while providing none of their own."

Defense counsel, in his response to plaintiffs' motion to compel and for sanctions argues that Mr. Booth is "not being proffered for any other reason except to rebut claims of Plaintiffs' expert."  <u>See</u> Docket No. 50 at pages 4-5.  As such, defendant asserts that their expert disclosure was not untimely because Fed. R. Civ. P. 26(a)(2) specifically provides in part, "...if the expert testimony is purely to contradict or rebut testimony disclosed by another party, then the disclosure must be made within 30 days after the disclosure by the other party."  As such, defendant argues that plaintiffs filed their motion to compel and for sanctions prior to the expiration of the 30 day period for production.

25

Defendant responded to plaintiffs' motion on August 22, 2011, and, as part of defendant's response, defendant attached Mr. Booth's report.  As such, defendant asserts that "even though [Mr. Booth's report was] requested before the deadline, [attaching the report to their response] cures any complaints of Plaintiff and does not prejudice Plaintiff by the same."  <u>See</u> Docket No. 50 at page 4.

Defendant attempts to take refuge in Fed. R. Civ. P. 26(a)(2) for her failure to disclose her expert, Mr. Booth, and his report in accordance with the district court's scheduling order.  Defendant and plaintiffs filed a joint motion stipulating to simultaneous disclosure of their experts.  Furthermore, defendant and plaintiffs stipulated that failure to comply with the court's scheduling order regarding disclosure of expert opinions would prohibit trial testimony of any such expert.  Now, defendant attempts to seek protection under Fed. R. Civ. P. 26(a)(2), which provides an additional 30 days for designation of rebuttal experts.  However, defendant fails to acknowledge that Rule 26(a)(2) is only applicable "absent a stipulation or court order."  Fed. R. Civ. P. 26(a)(2)(D).  In this case, there is both a stipulation and court order. Thus, defendant's attempts are futile.

Furthermore, even if defendant could be shielded by Rule 26(a)(2) for her untimely expert disclosure, defendant failed to comply with Rule 26.  Rule 26 provides that "absent a stipulation or court order" and "if the evidence is

intended solely to contradict or rebut evidence on the same subject matter identify by another party" the identity and report of the expert must be disclosed "within 30 days." Here, plaintiffs' experts had to be disclosed on July 15 and the defendant did not disclose Mr. Booth's report until August 22, 2011, more than 30 days after the court's expert disclosure deadline. Thus, defendant missed her own purported deadline.

Untimely disclosure of an expert opinion triggers Rule 37(c)(1) sanctions, including the possibility of exclusion at trial of testimony on undisclosed opinions, unless "the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). The court considers four factors in determining whether exclusion is a proper sanction for an untimely expert report: (1) the excluded material's importance; (2) the party's explanation for failing to comply with the discovery rules; (3) potential prejudice if the evidence were to be used at trial; and (4) the availability of a continuance to cure any prejudice. Citizens Bank of Batesville, Ark. v. Ford Motor Co., 16 F.3d 965, 967 (8th Cir. 1994) (applying the test to excluding witnesses at trial).

Under the first factor, Mr. Booth's report is important as is contains the basis for his findings as well as his conclusions regarding the accident between Mr. Couture and Ms. Anderson. Under the second factor, defense counsel's explanation for failing to comply with the discovery deadlines is insufficient. Defendant stipulated to simultaneous disclosure and failed to comply with the

district court's scheduling order.  Finally, defendant does not claim that the untimely reports are based on new evidence or information obtained after the disclosure deadline.  The first and second factors weigh in favor of finding that the untimely reports are not substantially justified.

Under the third factor, the court evaluates what prejudice plaintiffs will experience if the untimely reports are admitted.  Plaintiffs assert that the defendant's failure to timely disclose her expert and expert's report has prejudiced the plaintiffs by denying them access to evidence in support of defendant's claims.  Plaintiffs further assert that they have been unable to prepare an effective defense against the affirmative claims against them.

The prejudice articulated by the plaintiffs is minimal.  No trial date has been set in this action and plaintiffs have had defendant's expert's report for more than five months.  Furthermore, as asserted by plaintiffs, plaintiffs' believe that defendant's expert's report and opinion regarding the accident actually bolsters plaintiffs', not defendant's, claims.  Thus, factor three weighs in favoring of denying the motion to exclude defendant's expert at trial.

The fourth factor examines whether the prejudice can be cured with a continuance.  This case has been pending since April of 2010, and the trial has not yet been scheduled.  Therefore, factor four weighs in favor of denying the motion to exclude defendant's expert at trial.  After weighing all of the factors,

the court finds that plaintiffs have not shown prejudice.  Thus, plaintiffs'
request to exclude defendant's expert's testimony at trial is denied.

### 3.   Dismissal of Defendant's and Third Party Plaintiff's Affirmative Claims

Plaintiffs' ask this court to dismiss the affirmative claims against them
for failure of Mr. and Ms. Anderson to substantiate their claims against the
plaintiffs and to meet discovery deadlines.  However, as discussed above, the
court has found that plaintiffs were not substantially prejudiced by defendant's
failure to timely provide her expert's report and the court has ordered that the
defendant disclose the Safeco reports and the photographs used in Trooper
Rybak's deposition to plaintiffs.  If plaintiffs believe that the evidence is such
that a reasonable jury could not find in favor of Mr. and Mrs. Anderson on their
affirmative claims against plaintiffs, then plaintiffs are free to file a motion for
summary judgment.  However, this court will not dismiss the affirmative claims
based on plaintiffs' mere assertion that they are not substantiated.

### CONCLUSION

Based on the forgoing discussion, Mr. Couture's and Ms. Beauparlant's
motion is granted in part and denied in part as follows.  It is hereby

ORDERED that plaintiffs' motion to compel production of documents is
granted.  Within 20 days from the date of this order, defendant shall obtain
and provide plaintiffs with a copy of the Safeco accident reconstruction report

29

created during Safeco's investigation of the accident between Mr. Couture and

Ms. Anderson, as referenced in Amy Pappas' February 12, 2009, letter.

Alternatively, defendant shall acquiesce in the depositions of Amy Pappas and

such other Safeco employees as shall be necessary regarding the disposition of

the report referenced in Ms. Pappas' letter.  These depositions shall take place

as soon as the witnesses can be made available.  It is further

ORDERED that defendant shall immediately provide plaintiffs with

copies of the photographs used during Trooper Rybak's deposition.  It is further

ORDERED that plaintiffs' motion for sanctions to exclude any reference

to the Safeco report and to exclude testimony of defendant's expert, Brad

Booth's, is denied without prejudice.  Depending on the course of further

discovery in this case, plaintiffs may renew this request before trial in the form

of an *in limine* motion(s).  Additionally, plaintiff's request for the sanction of

dismissal of Ms. Anderson's and Mr. Anderson's affirmative claims for relief is

denied.  If is further

ORDERED  that plaintiffs shall be entitled to reasonable attorney's fees

and costs for bringing this motion to compel.  See Fed. R. Civ. P. 37.  Plaintiffs

shall file an affidavit with proof of service setting forth an itemization of the

time reasonably spent on the present motion, the hourly rate requested for

attorney's fees and costs, and any factual matters pertinent to the motion for

attorney's fees within twenty-one days of this order.  Ms. Anderson shall file

30

objections, if she has any, to the allowance of fees or the amount within fourteen calendar days after receipt of service of plaintiffs' motion and affidavit. Ms. Anderson may, by counter affidavit, controvert any of the factual matters contained in plaintiffs' motion and may assert any factual matters bearing on the award of attorney's fees.  D.S.D. LR 54.1(C).  Plaintiffs shall have seven days thereafter to file a reply.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).   Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated February 3, 2012.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE

31