UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| PIERRE COUTURE AND<br>LINDA V.M. BEAUPARLANT, | ) <br> ) <br> ) | CIV. 10-5026 |
|     Plaintiff and Third Party<br>    Defendants, | ) <br> ) <br> ) | |
| vs. | ) <br> ) | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES**<br>[Docket No. 61] |
| NICKI L. ANDERSON, | ) <br> ) | |
|     Defendant, | ) <br> ) | |
| vs. | ) <br> ) | |
| MARK ANDERSON, | ) <br> ) | |
|     Third Party Plaintiff. | ) | |

**INTRODUCTION**

Previously, this court granted in part and denied in part plaintiffs' motion to compel. See Docket No. 60. In so ruling, the court indicated that it would award reasonable attorney's fees for plaintiffs' efforts in bringing the motion. Id. Pending now before the court is plaintiffs' request for $10,319 in attorneys fees for bringing that motion. See Docket Nos. 61, 62. Defendant Nicki Anderson objects to the amount requested, arguing that the amount is not reasonable. See Docket No. 63.

1

**FACTS**

The facts pertinent to the underlying motion to compel are outlined in this court's prior order and are incorporated herein by reference.  See Docket NO. 60.  In summary, this action is a garden-variety motorcycle accident that resulted in personal injuries.  Jurisdiction is founded on diversity of citizenship of the parties.  The major issue regarding liability is whether Mr. Couture caused the accident by crossing over the center dividing line in the highway, resulting in the collision with Ms. Anderson, or whether Ms. Anderson crossed the center line.

In February, 2009, Ms. Anderson's insurance company wrote a letter to Mr. Couture's insurance company making reference to an accident reconstruction report obtained by Ms. Anderson's insurer.  Ms. Anderson's insurer relied on this report to deny liability for Ms. Anderson for any damages from the accident.  Ms. Anderson herself made reference to this report in answers to interrogatories and in her deposition.  Nevertheless, Ms. Anderson refused to produce a copy of the report in response to discovery requests for it.  Ms. Anderson first claimed privilege for the document, then later denied that the document ever existed.

Plaintiffs' motion to compel was a straightforward request that the court either order Ms. Anderson to produce the accident report or to enter an order dismissing Ms. Anderson's counterclaim, dismissing her husband's third party

claim, and prohibiting Ms. Anderson from using the report at trial. Plaintiffs also sought production of certain photographs in Ms. Anderson's possession that had been used in the deposition of a South Dakota Highway Patrolman.

## DISCUSSION

### A. Lodestar Method of Determining Reasonable Award of Attorney's Fees

Plaintiffs have the burden to establish a factual basis for the award of fees they request. The court must evaluate plaintiffs' request for attorney's fees to determine whether it is reasonable. See Johnston v. Comerica Mortg. Corp., 83 F.3d 241, 246 (8th Cir. 1996). "Because any award [of attorneys fees] has the potential for 'precedential value' in future cases, the Court owes a duty to the principled development of the law to exercise careful judgment in reviewing agreed-upon [or undisputed] fees." Duhaime v. John Hancock Mut. Life Ins. Co., 989 F. Supp. 375, 379 (D. Mass. 1997) (citing Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 526 (1st Cir. 1991)).

The appropriate amount of attorneys fees is highly fact-specific to the case. There are two methods of determining attorneys fees: the lodestar method and the "percentage of the benefit" method. See H.J. Inc. v. Flygt Corp., 925 F.2d 257, 259-60 (8th Cir. 1991); Comerica Mortg. Corp., 83 F.3d at 246; Walitalo v. Iacocca, 968 F.2d 741, 747-48 (8th Cir. 1992). Here, the request for attorneys fees does not come at the end of the case, but rather at

an interim point in the litigation, so the court chooses to employ the lodestar method of determining reasonable attorneys fees.

The lodestar is figured by multiplying the number of hours reasonably expended by the reasonable hourly rates.  Finley v. Hartford Life & Accident Ins. Co., 249 F.R.D. 329, 332-33 (N.D. Cal. Feb. 22, 2008); Tequila Centinela, S.A. de C.V. v. Bacardi & Co., Ltd., 248 F.R.D. 64, 68 (D.D.C. 2008); Creative Resources Group of New Jersey, Inc. v. Creative Resources Group, Inc., 212 F.R.D. 94, 103 (E.D.N.Y. 2002); Kayhill v. Unified Gov't. of Wyandotte County, 197 F.R.D. 454, 459 (D.Kan. 2000); and Trbovich v. Ritz-Carlton Hotel Co., 166 F.R.D. 30, 32 (E.D. Mo. 1996). The burden is on the moving party to prove that the request for attorneys' fees is reasonable.  Tequila Centinela, S.A. de C.V., 248 F.R.D. at 68; Creative Resources Group, Inc., 212 F.R.D. at 103; Kayhill, 197 F.R.D. at 459.

Once the lodestar is calculated, there are twelve factors that are relevant in considering whether that figure should be adjusted up or down:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

See Hensley v. Eckerhart, 461 U.S. 424, 430 n.3, 434 (1983) (citing the American Bar Association Code of Professional Responsibility, Disciplinary Rule 2-106). "[T]he most critical factor is the degree of success obtained." Id. at 436.

**B.     Reasonable Hourly Rate is the Prevailing Rate in the District of South Dakota**

The reasonable hourly rate is usually the ordinary rate for similar work in the community where the case is being litigated. Tequila Centinela, S.A. de C.V., 248 F.R.D. at 68 (citing Laffy v. Northwest Airlines, Inc., 746 F.2d 4, 16 (D.C. Cir. 1984) (hourly rate must be sufficient to attract competent counsel, but not so excessive as to produce a windfall, and generally must be in line with rates charged by other attorneys of comparable skill, reputation, and ability within the community.)

The plaintiffs submit an itemization for fees requested that includes time billed by Andrea Doran, David Barari, and G. Verne Goodsell. However, plaintiffs never inform the court of the total hours attributable to each individual biller. Plaintiffs also fail to set forth what the hourly rates are for each biller represented on the itemization. By applying the court's own computations, the court deduces that the hourly rate billed by Andrea Doran is $90 per hour; the hourly rate for David Barari is $150 per hour; and the hourly rate for G. Verne Goodsell is $300 per hour.

5

Plaintiffs never provide the court with any evidence of whether these hourly rates are customary or reasonable in this community. Plaintiffs never state what the qualifications of the three persons are who have billed time on this itemization. Plaintiffs never even state whether the persons listed are attorneys. The court is familiar with Mr. Barari and Mr. Goodsell, and can take judicial notice of the fact that they are attorneys. However, the court has no knowledge of Ms. Doran. She may be an attorney new to this area, she may be a paralegal, she may be a secretary who is not entitled to bill time under state law. Since it is plaintiffs' burden to show entitlement to the fees requested and plaintiffs have entirely failed to address any information regarding Ms. Doran, the court disallows entirely the fees requested for Ms. Doran.

That leaves Mr. Barari and Mr. Goodsell. Although the court is aware that these gentlemen are lawyers, plaintiffs cite to no information that would allow the court to determine whether the hourly rates they are requesting are prevailing attorneys fee rates for personal injury litigation in South Dakota. However, the court may determine those rates based on its own knowledge of prevailing rates here. See Creative Resources Group, Inc., 212 F.R.D. at 103-104 (holding that "it is within the judge's discretion to determine reasonable fees based on his or her knowledge of prevailing community rates").

Experienced, partner-level trial counsel in this community have received awards of attorneys fees ranging from $200.00 per hour to $225.00 per hour in

6

lawsuits requiring highly specialized knowledge such as the Voting Rights Act. See Cottier v. City of Martin, Civ. No. 02-5021, Docket No. 469, page 6 (March 25, 2008); Bone Shirt v. Hazeltine, Civ. No. 01-3032, Docket No. 411, page 4 (June 22, 2006). In other cases where the hourly rate is limited by statute, courts have awarded fees based on an hourly rate of $150 per hour. See Kahle v. Leonard, Civ. No. 04-5024, Docket No. 259 (D.S.D. July 14, 2008).

In awards of attorneys fees as sanctions for motions to compel, the hourly rates of attorneys' fees have ranged from $145 per hour to $250 per hour. See Heil v. Belle Starr Saloon & Casino, Inc., Civ. No. 09-5074, Docket No. 68 (D.S.D.); Beyer v. Medco Ins. Group, Civ. No. 08-5058, Docket No. 65 (D.S.D.); Howard Johnson Internat'l, Inc. v. Inn Development, Inc., Civ. No. 07-1024, Docket No. 73 (D.S.D.); Oyen v. Land O'Lakes Inc., Civ. 07-4112, Docket Nos. 56, 62 (D.S.D.).

Hourly rates of up to $365 per hour have been approved in this district. Nienaber v. Citibank (South Dakota) N.A., Civ. No. 04-4054, Docket No. 101 (D.S.D. July 5, 2007). However, the decision in Nienaber is distinguishable. That was a case involving a high degree of risk for the plaintiff's attorney and a high degree of specialized knowledge as it was a class action representing at least 1,000,000 class members under the Fair Debt Reporting Act against a very large South Dakota employer. Id. at 1-2, 6. Few lawyers in this district could be expected to have the funds to finance such a large class action, and

fewer still would be expected to risk their funds against a defendant who might be sympathetic to a large number of prospective jurors.  Thus, it was understandable that out-of-state counsel were retained and that their fees were based on the prevailing rates in their state, not this district.  Furthermore, the Nienaber case is distinguished by virtue of the fact that the parties had a "clear sailing" provision in their settlement agreement whereby the defendant agreed not to oppose the application for attorneys fees in return for the plaintiffs' promise to cap their request for attorneys fees at an agreed-upon figure.  Id. at 1-2.

  The court concludes on the basis of its own knowledge of prevailing rates in the District of South Dakota, based on recent awards of attorney's fees in this district, and based on the straightforward nature of the legal issues in this case that an hourly rate of $300 per hour for Mr. Goodsell's time is not justified, and that $200.00 per hour should be the prevailing reasonable hourly rate for his time.  Again, plaintiffs fail entirely to address Mr. Goodsell's qualifications or entitlement to such an hourly rate.  However, the court takes judicial notice of the fact that Mr. Goodsell is a senior partner with considerable litigation experience and a past president of the State Bar of South Dakota.  Nevertheless, as noted above, this was a run-of-the-mill discovery motion in a garden-variety personal injury case that does not require specialized legal knowledge or skill.

The rate at which Mr. Barari's time is billed is $150 per hour. Again, the court has had to glean information about Mr. Barari from its own efforts as plaintiffs do not inform the court as to his qualifications or experience. Mr. Barari is a relatively new attorney with less than five years experience practicing law. Although his hourly rate is on the high end, the court finds it to be within the range of prevailing rates for attorneys at Mr. Barari's level of experience in this community for similar legal work. See Textron Financial Corp. v. JWL, Inc., Civ. No. 10-5060, Docket No. 71, at page 9 (D.S.D. Feb. 8, 2012) (approving $175 per hour in routine debt collection action for local counsel with approximately 10 years experience practicing law).

**D.    Reasonable Hours**

Courts are charged with excluding from awards of attorneys fees hours that were not "reasonably expended." Hensley, 461 U.S. at 434. "Cases may be overstaffed, and the skill and experience of lawyers vary widely." Id. In determining the reasonable hours expended by plaintiffs' lawyers in this matter, the court turns to the itemized billing statement provided by plaintiffs in support of their request for attorneys fees. See Docket No. 62-1.

The court notes that virtually every item on the billing statement submitted by plaintiffs appears to have some duplication of work. Multiple billers–usually both Mr. Barari and Mr. Goodsell in addition to Ms. Doran-- reviewed the same draft of the same pleadings, whether it was a pleading or

letter received from defendant, or whether it was plaintiffs' own pleading or letter being sent to defendant.  <u>See, e.g.</u> Docket No. 62-1.

The court has already reduced these hours by disallowing the billing by Ms. Doran, because it is factually unsupported.  By adding up all of Ms. Doran's entries on the itemized bill, the court concludes that her time totals 24.6 hours.  At a rate of $90 per hour, this reduces plaintiffs' submitted billing statement by $2,214.[1]

By adding Mr. Goodsell's individual time entries, the court concludes that his total time billed on this itemization was 10.5 hours.  Reducing his hourly rate from $300 per hour to $200 per hour reduces the total of Mr. Goodsell's billing on this statement to $2,100, a reduction of $1,050.  The remaining sum requested would thus be $7,055.91.

Plaintiffs never explain why it was necessary for both attorneys to review every in-coming and out-going letter or pleading.  Certainly, if two attorneys are handling a file together, there is some degree of overlapping effort.  But not every action need be duplicated.  In addition, when a firm chooses to put two attorneys on a simple and straightforward personal injury file, that is to some degree a decision meant to benefit the firm by allowing it to provide mentoring to its younger attorneys and to provide continuity to its clients.  Finally, the

---

[1] The court includes in Ms. Doran's total 0.2 hours attributed to "Donna Craven, CP," about whom plaintiffs also fail to tell the court anything.

court notes that, after deducting Ms. Doran's hours, plaintiffs request compensation for 39.5 attorney hours for a total in fees (at Mr. Goodsell's reduced hourly rate of $200 per hour) of slightly more than $7,000. Both the hours and the total fee is high for an award of attorneys fees on a motion to compel where the issues did not involve any complicated legal analysis or a lengthy laundry-list of items to be addressed.

In this district, this court has approved requests for attorneys fees ranging from $1,041.45 to $1,509.97 for run-of-the-mill motions to compel. See Heil, Civ. No. 09-5074, Docket No. 68 ($1,041.45 awarded); Howard Johnson Internat'l. Inc., Civ. No. 07-1024, Docket No. 73 ($1,453.50 awarded); Oyen, Civ. No. 07-4112, Docket Nos. 56 and 62 ($1,509.97 awarded to defendant on defendant's motion to compel; $1,140.75 awarded to plaintiff on plaintiff's motion to compel).

In one extraordinary case the plaintiff made a detailed motion to compel involving 13 separate issues and the court granted that motion in pertinent part. The plaintiff then had to make a second motion to compel when the defendant refused to comply with the court' previous order as to eight of the thirteen issues. In that case, the court awarded $13,480 in attorneys' fees representing 53.92 hours on both motions. See Beyer, Civ. No. 08-5058, Docket No. 65 (D.S.D.).

Here, plaintiffs' motion to compel presented only two issues, neither of which were complex or difficult. Plaintiffs did file a 14-page initial memorandum in support of their motion along with numerous exhibits, and a 13-page reply brief. In reviewing prior similar motions, the court notes that attorneys have spent anywhere from 4.8 hours to 10.9 hours on routine motions to compel. See Heil, Civ. No. 09-5074, Docket No. 68; Howard Johnson Internat'l. Inc., Civ. No. 07-1024, Docket No. 73; Oyen, Civ. No. 07-4112, Docket No. 56. Giving plaintiffs the benefit of the doubt, the court finds that a reasonable number of hours to have spent on their motion to compel would be 15 hours at the outside. At 15 hours divided evenly between Mr. Barari and Mr. Goodsell, and hourly rates of $150 and $200 per hour respectively, plaintiffs are entitled to reasonable attorneys fees in the amount of $2,625 plus sales tax of $157.50. Plaintiffs' request of $23.07 for copying and faxing costs is reasonable.

Ultimately, the burden is on plaintiffs to prove that their request for attorneys' fees is reasonable. Tequila Centinela, S.A. de C.V., 248 F.R.D. at 68; Creative Resources Group, Inc., 212 F.R.D. at 103; Kayhill, 197 F.R.D. at 459. By failing to explain why the total hours or the hourly rates, which are far above normal for similar motions, were necessary in this particular case, plaintiffs did not carry their burden.

## CONCLUSION

Good cause appearing, it is hereby

ORDERED that plaintiffs' request for attorney's fees on their motion to compel is granted in part and denied in part. Plaintiffs are awarded fees and costs as follows:

| | | |
|---|---|---|
| Mr. David Barari | 7.5 hours at $150/hr | $1,125.00 |
| Mr. G. Verne Goodsell | 7.5 hours at $200/hr | $1,500.00 |
| Total Attorney's Fees | | $2,625.00 |
| 6% Sales Tax on Attorneys Fees | | $   157.50 |
| Costs | | $     23.07 |
| **TOTAL AWARD OF FEES & COSTS** | | **$2,805.57** |

It is further

ORDERED that defendant Nicki L. Anderson shall remit the above sum to plaintiffs' attorneys no later than 30 days from the date of this order.

Dated April 9, 2012.

       BY THE COURT:

       /s/ *Veronica L. Duffy*

       VERONICA L. DUFFY
       UNITED STATES MAGISTRATE JUDGE